IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JERMAINE JACKSON | ) | |
| | ) | |
| v. | ) | No. 3:15-00293 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), filed by the Movant/Petitioner, pro se. The Government has filed a Response (Docket No. 19) in opposition to the Motion.

For the reasons set forth herein, Petitioner's Motion To Vacate (Docket No. 1) is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

The Petitioner was named in seven counts of a 46-count Third Superseding Indictment charging multiple drug trafficking and firearms offenses. (Docket No. 589 in Case No. 3:11-00194). Seventeen other individuals were named as Co-Defendants during the course of the proceeding, two of whom eventually proceeded to trial. (Docket Nos. 863, 1612 in Case No. 3:11-00194).

The Petitioner was represented by four different attorneys during the proceedings in the district court: Dumaka Shabazz, Thomas F. Bloom, Kimberly S. Hodde, and Donald E. Dawson. The week before trial was scheduled to begin, when he was represented by Mr. Bloom, the Petitioner requested new counsel, and the Court held a hearing to consider that request, but the

Petitioner refused to speak. (Docket Nos. 802, 824, 1045 in Case No. 3:11-00194). The Court denied the request after weighing the relevant considerations. (Id.)

Later that same day, the Petitioner pled guilty, through a Plea Agreement, to conspiracy to distribute, and possess with intent to distribute, 280 grams of cocaine base, and a quantity of cocaine and marijuana, in violation of 21 U.S.C. § 846 (Count One), as well as possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Forty-Six). (Docket Nos. 828, 829, 881 in Case No. 3:11-00194). Through the Plea Agreement, the Petitioner agreed that he was a Career Offender, that his guideline sentencing range would be 352 to 425 months of imprisonment, and that if the Government did not move for a reduced sentence based on the Petitioner's substantial assistance, the agreed sentence would be 352 months. (Docket Nos. 829, 881 in Case No. 3:11-00194).

Through documents subsequently filed with the Court, the Petitioner, acting *pro se*, complained about Mr. Bloom's representation, and requested to withdraw his guilty plea. (Docket Nos. 854, 869, 880 in Case No. 3:11-00194). After holding a hearing to consider the Petitioner's requests, the Court granted the request for new counsel and denied the request to withdraw the guilty plea. (Docket Nos. 891, 892, 996 in Case No. 3:11-00194).

Ms. Hodde, who was appointed to take over representation of the Petitioner, filed a motion requesting that the Court reconsider the denial of Petitioner's request to withdraw his guilty plea. (Docket Nos. 1324, 1325, 1327 in Case No. 3:11-00194). At the hearing on the motion, however, the Petitioner moved to withdraw the motion, and the Court granted the request. (Docket Nos. 1382, 1384 in Case No. 3:11-00194).

Shortly thereafter, the Petitioner was subpoenaed to testify at the trial of Co-Defendant

Sterling Rivers, who proceeded to trial *pro se,* and Ms. Hodde filed a motion seeking to quash the subpoena. (Docket Nos. 1476, 1480, 1481, 1491, 1492, 1493 in Case No. 3:11-00194). At a hearing to consider the motion, the Petitioner rejected Ms. Hodde's advice to invoke his Fifth Amendment privilege and indicated he would answer certain questions by Co-Defendant Rivers at trial. (Docket Nos. 1569; 1686, at 77-96, in Case No. 3:11-00194). After the hearing, Ms. Hodde filed a motion to withdraw as counsel for the Petitioner because he rejected her advice. (Docket No. 1568 in Case No. 3:11-00194). The Court granted the request, and Donald E. Dawson subsequently entered a notice of appearance for the Petitioner. (Docket Nos. 1570, 1587 in Case No. 3:11-00194). Prior to being called as a witness at Mr. River's trial, however, the Petitioner changed his mind and invoked his Fifth Amendment privilege. (Docket Nos. 1589, 1596, 1599; 1677, at 1085-89, in Case No. 3:11-00194).

At the subsequent sentencing hearing, the Court imposed a total sentence of 352 months of imprisonment. (Docket Nos. 1642, 1644, 1645, 1690 in Case No. 3:11-00194). The Petitioner appealed, and the Sixth Circuit dismissed the appeal based on the appellate waiver provision in his Plea Agreement. (Docket No. 1840 in Case No. 3:11-00194).

At the change of plea hearing, the Petitioner agreed to the following facts to support the plea:

> [I]n late 2009, Lebanon, Tennessee, began to experience a steady rise in gang-related violence. In conjunction with the FBI, Lebanon police officers identified a street gang known - - unknown Vice Lords operating in the area. The FBI recruited an area Vice Lord to cooperate in their investigation. This informant, CS1, was a criminal himself and received benefits in exchange for his cooperation. This informant identified many of the Vice Lords he regularly associated with including Jeffrey Benson, Jessie Allen, Sterling Rivers, and Jermaine Jackson.
>
> CS1 detailed that the gang members supplied drugs to one another for

3

distribution and helped protect one another in disputes that arose with other gangs over drugs.

CS1 said that the Vice Lords. . . kept guns to prevent being robbed of their drugs and drug proceeds. CS1 purchased drugs from the defendant and others. He regularly carried a recording device and kept one in his car as well.

CS1 purchased drugs from the defendant on multiple occasions. On June 23rd, 2010, CS1 purchased three grams of crack from the defendant at a – at the Dollar General at Lebanon. The deal occurred in the defendant's car. The informant carried a recorder and recorded the deal. On December 1st, 2010, CS1 recorded phone calls with the defendant where the defendant agreed to sell crack. They met at a BP gas station in Wilson County. CS1 witnessed the defendant arrive in it with another person, DJ. DJ exited the car and provided six grams of crack to the CS1 in his car. This was video-recorded.

On December 2nd, CS1 recorded calls with the defendant where he again agreed to sell crack cocaine. This time they met at a Raceway Gas station in Wilson County. The defendant entered CS1's car. On the recording, the defendant clearly passed the informant a bag of white substance that later TBI testing revealed to be 10.8 grams of crack cocaine. FBI Special Agent Brad [Brett] Shields personally observed the defendant enter CS1's car.

The defendant was arrested during the course of the conspiracy on multiple occasions. On September 9, 2009, the defendant was arrested with another Vice Lord, MH, at 1701 Bunker Hill Road, Cookeville, Tennessee. The officers located crack cocaine drying on a coffee filter.

On January 11, 2011, the defendant pled guilt to facilitation to distribute a controlled substance in reference to this event. The defendant was present but not arrested at 512 Main Street in Watertown, Tennessee.

The police found a gun in the defendant's coat. Mail and legal correspondence addressed to the defendant were at this address. Officers also found photographs of the defendant with other Vice Lords, including Jeffrey Benson.

On September 16, 2011, the FBI executed an arrest warrant at the defendant's home, 204 Burdock, Lebanon, Tennessee. They found five grams of crack cocaine, scales, gang photos, and a FEG model AP-MBP .32-caliber pistol in a box of shoes. The defendant admits and acknowledges that an amount of crack cocaine that was reasonably foreseeable to be distributed in the course of this conspiracy was in excess of one kilogram of crack cocaine but less than 2.8 kilograms of crack cocaine.

(Docket No. 881, at 20-23, in Case No. 3:11-00194).

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his convictions and sentence should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Ray, 721 F.3d at 761.

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 104 S.Ct. at 2065.

In order to establish prejudice, the petitioner must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., at 2052. The likelihood of a different result "must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

Petitioner argues that he received ineffective assistance based on counsel's failure to object to the quantity of cocaine base attributed to him for purposes of sentencing. The Petitioner pled guilty to a drug conspiracy charge involving 280 grams or more of cocaine base, and a quantity of cocaine and marijuana. (Docket Nos. 589, 829, 881 in Case No. 3:11-00194). Through his Plea Agreement and guilty plea, the Petitioner specifically agreed that the amount of cocaine base distributed in the course of the conspiracy was between 1 and 2.8 kilograms. (Id.)[2]

The Petitioner has failed to present any evidence or argument by which counsel could have challenged the quantity of cocaine base attributed to him. The Court notes that, at the trial of one of Petitioner's co-conspirators, the jury specifically found that the drug conspiracy in which the Petitioner participated involved 280 grams or more of cocaine base, as well as a quantity of cocaine and marijuana. (Docket No. 863 in Case No. 3:11-00194).

---

[2] The Plea Agreement, signed by the Petitioner, states: "The defendant admits and acknowledges that the amount of crack cocaine that was reasonably foreseeable to be distributed in the course of this conspiracy was in excess of one kilogram of crack cocaine, but less than 2.8 kilograms of crack cocaine." (Docket No. 829, at p. 6, in Case No. 3:11-00194). The Plea Agreement further states that the base offense level for the drug conspiracy charge is 34 "since the offenses involved 840 grams to 2.8 kilograms of cocaine base ('crack cocaine')." (Id., at 7). At the change of plea hearing, the Court read and explained those and other provisions of the Plea Agreement to the Petitioner and the Petitioner indicated that he understood them. (Id., at p. 14, 16, 18, 22-23).

7

Furthermore, the Petitioner has not shown that a challenge to the quantity of cocaine base would have resulted in a reduction of his sentence given his status as a Career Offender. The Petitioner's offense level and Criminal History category, as a Career Offender, were determined by Sentencing Guideline Section 4B1.1, rather than the drug quantity table in Sentencing Guideline Section 2D1.1. (Docket No. 1732, at ¶¶ 28, 48).

Next, Petitioner argues that counsel should have known that his learning disabilities and low IQ rendered his guilty plea involuntary. Petitioner cites the psychological evaluation filed in support of his second motion seeking withdrawal of his guilty plea, which he later withdrew. (Docket Nos. 1327, 1384 in Case No. 3:11-00194). The evaluation states, among other things, that the Petitioner has an IQ of 80, reads at a fourth-grade level, has "deficits in vocabulary and verbal concepts," and that "[i]t is important that he have an opportunity to ask questions about things he does not understand." (Docket No. 1327, at 8, in Case No. 3:11-00194).

The record reveals, however, that the Petitioner's learning deficits did not undermine the validity of his guilty plea. The record indicates that prior to the change of plea hearing, the Assistant United States Attorney presented a detailed preview of its case against the Petitioner, and Petitioner's counsel, as well as the AUSA, went over the Plea Agreement with the Petitioner "line by line, term by term," and offered the Petitioner an opportunity to ask questions. (Docket No. 996, at 18-21, in Case No. 3:11-00194).[3]

In addition, there is no indication in the transcript of Petitioner's change of plea hearing

---

[3] The Government has also filed an affidavit by counsel confirming that he went over the Plea Agreement with the Petitioner line by line. (Docket No. 19-1). The Court finds it unnecessary to rely on the affidavit, however, in reaching its conclusion that Petitioner's claims are without merit.

that Petitioner's guilty plea was not made intelligently, knowingly, and voluntarily.[4] The Court began the hearing by summarizing its understanding of the terms of the Plea Agreement – that the Petitioner was agreeing to a sentence of 352 months of custody, with the possibility of a reduced sentence for substantial assistance. (Docket No. 881, at 2, in Case No. 3:11–00194)). The Court then placed the Petitioner under oath, and explained the elements the Government would have to prove in order for him to be found guilty of the two counts to which he pled guilty. (Id., at 4-8). The Court then asked the Petitioner if he felt like he understood the nature, meaning and cause of the charges against him, and the Petitioner said he did. (Id., at 8). The Court asked the Petitioner if he and his lawyer had talked about what the Government would have to prove in order for him to be found guilty. (Id., at 8-9). The Petitioner said they had done so. (Id., at 9). The Court asked the Petitioner if he was satisfied with his lawyer, and he said he was. (Id.).

The Court explained the maximum possible penalty the Petitioner was facing, supervised release, and the sentencing process. (Id., at 9-11). As part of that discussion, the Court advised the Defendant that the agreed sentence was 352 months of custody, with the possibility of a reduced sentence for substantial assistance. (Id., at 11). The Court also explained to the Petitioner that he would not be allowed to withdraw his guilty plea simply because he changed his mind, but that he would be allowed to withdraw his guilty plea if the Court did not impose

---

[4] A guilty plea complies with the requirements of due process if it is entered knowingly and voluntarily under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 748-49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). See also United States v. Ruiz, 536 U.S. 622, 630, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). If a defendant understands the charges against him and the consequences of entering a guilty plea, and voluntarily chooses to plead guilty, without being coerced, the guilty plea will be upheld. Alvarez v. Straub, 21 Fed. Appx. 281, at **2, 2001 WL 1298993 (6th Cir. Aug. 9, 2001).

9

the agreed sentence. (Id., at 11). The Petitioner said he understood. (Id.) The Court advised the Petitioner of the rights he would be waiving by pleading guilty, and the Petitioner said that he still wanted to plead guilty. (Id., at 12-13).

The Court then went over the Petitioner's Plea Agreement in detail – paragraph by paragraph. (Id., at 13-18). That discussion included an explanation of the agreed sentence:

> . . . there's an agreed sentence of 352 months in the custody of the Bureau of Prisons and five years of supervised release prior to any departure. If the government does not move for a downward departure based on substantial assistance or it's not granted, you will be sentenced to 352 months' custody followed by five years of supervised release.
>
> If a downward departure motion for substantial assistance is filed and granted, then you could be sentenced below that agreed sentence of 352 months followed by five years of supervised release. If you're not sentenced to that, you can withdraw from your plea agreement; if you are sentenced to that, you cannot withdraw from your plea agreement.
>
> Any questions about that?
>
> THE DEFENDANT: No.

(Id., at 15-16).

After completing the explanation of the Plea Agreement, the Court asked the Petitioner if he had any questions about it, and the Petitioner said he did not. (Id., at 18). When asked if he felt any pressure or coercion to plead guilty, the Petitioner said he did not. (Id.) The Court also asked the Petitioner whether he was having any other difficulties:

THE COURT: Are you being treated for any mental health issues?

THE DEFENDANT: No.

THE COURT: Is your mind clear?

10

>    THE DEFENDANT: Yes.
>
>    THE COURT: Do you know what you're doing?
>
>    THE DEFENDANT: Yes.
>
>    THE COURT: Are you having any trouble understanding me?
>
>    THE DEFENDANT: No.
>
>    THE COURT: Are you acting voluntarily?
>
>    THE DEFENDANT: Yes.

(Id., at 19).

After the Government witness read a statement of facts to support the guilty plea, the Court asked the Petitioner if the statement was true, and the Petitioner said "Yes." (Id., at 23). The Court then asked the Petitioner if he was offering to plead guilty because he was in fact guilty as charged, and the Petitioner said that he was. (Id.). The Court ultimately accepted the guilty plea after finding that it was validly entered:

>    THE COURT: The Court has observed the appearance of Mr. Jackson. He is in full possession of his faculties. He is competent. He is not under the influence of drugs. He understands the nature of the charge, he understands the maximum possible penalty, understands the mandatory minimum sentences, he understands the consecutive sentence, he understands his Rule 11(c)(1)(C) sentence and how that works and understands the government has not guaranteed a substantial assistance motion, but one may be filed in the future, may not.
>      He understands his constitutional rights. He is aware of all the terms of his plea agreement and has offered to plead guilty knowingly, intelligently, and voluntarily. There's a factual basis for the plea of guilty, the plea of guilty is accepted, and Mr. Jackson's adjudged guilty of the offense.
>     This is directed to the lawyers: Is there any reason the Court should not approve the plea agreement at this time?
>
>    MR. BOUCEK: No, sir, your Honor.
>
>    MR. BLOOM: No, sir.

(Id., at 24). See also (Docket No. 996, at 34, in Case No. 3:11-00194 (Court denies Petitioner's *pro se* request to withdraw guilty plea, finding that the guilty plea was entered knowingly, intelligently and voluntarily)).

Nothing in the record suggests that the Petitioner's learning deficits rendered him incompetent, or otherwise prevented him from understanding the terms of the Plea Agreement and the consequences of pleading guilty. Furthermore, the Petitioner has failed to provide any evidence or argument indicating that an "effective" attorney would have negotiated a better plea deal, or would have advised him to go to trial.

Finally, Petitioner argues that counsel should have challenged application of the Armed Career Criminal Act ("ACCA") at sentencing. He argues that the prior convictions upon which the Court relied in applying the ACCA are not "crimes or violence" or "serious drug offenses."

The record indicates that the Court did not find the Petitioner to be an Armed Career Criminal under 18 U.S.C § 924(e), but it did find the Petitioner to be a Career Offender under U.S.S.G. § 4B1.1. The Court based its determination that the Petitioner was a Career Offender on the prior convictions listed in Paragraph 28 of the Presentence Investigation Report: (1) a Cook County, Illinois conviction for Delivery of a Controlled Substance and Possession of a Controlled with Intent to Distribute, for which he was sentenced on January 12, 1995 to three years of custody; (2) a Cook County, Illinois conviction for Delivery of a Controlled Substance, for which he was sentenced on May 8, 1995 to three years of custody; and (3) a Cook County, Illinois conviction for Aggravated Vehicular Hijacking with a Weapon, for which he was sentenced on October 29, 1996 to 11 years of custody; and (4) a Davidson County, Tennessee conviction for Possession with Intent to Distribute a Schedule II Controlled Substance, for which

12

he was sentenced on October 23, 2007 to three years of custody, suspended, and placed on three years of probation. (Docket No. 1732, at ¶¶ 28, 40, 41, 42, 44, 48, in Case No. 3:11-00194).

Section 4B1.1 of the Sentencing Guidelines define a Career Offender as follows:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The terms "crime of violence" and "controlled substance offense" are defined in Section 4B1.2:

> (a) The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[5]
>
> (b) The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Petitioner appears to argue that the Career Offender guideline does not apply

---

[5] The Court notes that it did not rely on the "residual clause" of Section 4B1.2(a)(2) in determining that the Petitioner was a Career Offender. See Johnson v. United States, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015)(ACCA's "residual clause" held to be void for vagueness); United States v. Harbin, 610 F. App'x 562, 2015 WL 4393889 (6th Cir. 2015)(vacating judgment and remanding for reconsideration in light of Johnson in a case involving a "crime of violence" conviction based solely upon the residual clause under U.S.S.G. § 4B1.2(a)(2)).

13

because unlawful possession of a firearm by a felon does not fall within the definition of a "crime of violence." The definition of crime of violence, however, applies to the Petitioner's "instant offense of conviction" for possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), as well as the Petitioner's prior conviction for aggravated vehicular hijacking with a weapon. Neither of these non-controlled substance offenses can be characterized as simple possession of a firearm by a felon.

The Petitioner also appears to argue that his Illinois controlled substance convictions involved only .4 grams of heroin, and therefore, do not qualify under the Career Offender guideline. As set forth above, however, the definition of "controlled substance offense" in the guideline does not exclude an otherwise qualifying conviction based on the small quantity involved.

Although trial counsel zealously argued that Petitioner's criminal history did not warrant the Career Offender label, his argument was ultimately unsuccessful. Petitioner has not explained how counsel could have presented a more effective challenge.

Accordingly, the Petitioner's ineffective assistance of counsel claims are without merit.

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255, and that Petitioner's Motion Under § 2255 should be denied and this action dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial

of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE